# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM E. REVEAL,
    Plaintiff,

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-179
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed his applications for DIB and SSI in December 2011, alleging disability since August 6, 2011, due to blindness in his right eye, right arm and hand problems/limited use, depression, and anxiety. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Ena Weathers. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On September 20, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since August 6, 2011, the alleged disability onset date (20 CFR 404.1571-1576 and 416.971-976).
>
> 3. The [plaintiff] has the following severe impairments: history of right eye blindness, right ulnar neuropathy status post open proximal radius and ulna fractures, and adjustment disorder with depressed mood (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity [(RFC)] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally use hand controls with the right upper extremity. He is unable to climb ladders, ropes, or scaffolds. He should avoid jobs requiring peripheral vision on the right. He should avoid all exposure to hazards, including moving machinery, commercial driving, and work at unprotected heights. He is limited to simple, routine, non-tandem tasks without strict production demands. He can occasionally interact with supervisors, coworkers, and the general public. He would occasionally require verbal instruction or reminders from supervisors. He is unable to lift more than ten pounds with the right upper extremity. He has no weight restriction on the left upper extremity. He should be able to occasionally

3

change from a seated to standing position, or vice versa, for one to two minutes after a period of two hours.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1965 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 6, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 12-20).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1]Plaintiff's past relevant work was as a landscape laborer, a heavy unskilled position, and a dump truck driver, a medium unskilled position. (Tr. 19).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as a price marker (14,800 jobs regionally and 1,800,000 jobs nationally), call out clerk (17,000 jobs regionally and 1,000,000 jobs nationally), and restroom attendant (400 jobs regionally and 18,400,000 jobs nationally). (Tr. 20).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges that the ALJ erred by: (1) failing to adopt physical restrictions assessed by the state agency reviewing physicians, Drs. Leon D. Hughes, M.D., and Anton Freihofner, M.D.; (2) failing to properly weigh the opinions of plaintiff's treating psychologist,

Dr. Kevin C. Murphy, Ph.D.; and (3) improperly weighing the opinion of one-time examining psychologist Dr. Taylor Groneck, Psy.D. (Docs. 11, 18).

### 1. Weight to the non-examining state agency physicians

Plaintiff alleges that the ALJ erred by failing to adopt restrictions assessed by the state agency reviewing physicians, Drs. Hughes and Freihofner. Plaintiff contends that the ALJ did not adequately explain why she rejected right upper extremity limitations imposed by the nonexamining physicians, which plaintiff alleges were supported by the medical evidence and uncontradicted by any evidence in the record. (Doc. 11 at 6-11; Doc. 18 at 2-4).

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id*. (citing 20 C.F.R. § 404.1527(a)(2)). *See also* 20 C.F.R. § 416.927(a)(2).

The applicable regulations set forth three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is

to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id*. at 876. The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010). *See also Smith,* 482 F.3d at 875. When deciding the weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. *Id*.

Here, nonexamining physicians Drs. Hughes and Freihofner reviewed the record and issued assessments restricting plaintiff to a limited range of light work. (Tr. 58-61, 88-91). Dr. Hughes issued his assessment on February 15, 2012. (Tr. 58-61). Dr. Hughes opined that plaintiff could lift/carry 20 pounds occasionally and ten pounds frequently; stand/walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally handle, finger, and feel with his right hand; and never climb ladders, ropes, or scaffolds due to right arm weakness and numbness. (Tr. 58-59). Dr. Hughes opined that plaintiff cannot perform jobs

7

requiring extensive depth perception or field of vision because he is blind in the right eye. (Tr. 60). Dr. Hughes opined that plaintiff must avoid commercial driving, hazardous machinery and unprotected heights due to vision problems and right arm weakness and numbness. (Tr. 61). Dr. Freihofner affirmed Dr. Hughes' assessment on May 7, 2012. (Tr. 88-91).

The ALJ gave "little weight" to the opinions of Drs. Hughes and Freihofner. (Tr. 17). The ALJ found that the "significant restrictions" the non-examining physicians imposed on plaintiff's use of his right upper extremity (1) were not supported by the medical evidence of record, and (2) were inconsistent with plaintiff's reported activities. (*Id.*). The ALJ specifically relied on the absence of any indication in the records of Dr. John Wyrick, M.D., plaintiff's treating orthopedist, that plaintiff would have problems feeling, handling or fingering with his right upper extremity. (*Id.*). Dr. Wyrick treated plaintiff through the Bureau of Workers Compensation (BWC) for work-related injuries plaintiff sustained on August 6, 2011, in a dump truck accident. Plaintiff was hospitalized for 11 days for his injuries, during which time he underwent three surgeries, including a skin graft and an open reduction internal fixation of a both-bone forearm fracture. (Tr. 434-40, 480, 603). In a January 2012 office note, Dr. Wyrick reported that after being informed that plaintiff was applying for disability, he advised plaintiff he could return to work "with no more than ten pounds' lifting with the right forearm." (Tr. 477). In an April 2012 office note, Dr. Wyrick opined that plaintiff "has permanent restrictions in which he is not going to be lifting more than 10 pounds with the right arm and no heavy pushing or pulling." (Tr. 874).

Plaintiff argues that the ALJ erred by finding the medical evidence does not support the right upper extremity restrictions assessed by the state agency reviewing physicians. Plaintiff

asserts that the ALJ did not reasonably rely on Dr. Wyrick's failure to indicate in his office notes that plaintiff has feeling, fingering and handling restrictions to reject the reviewing physicians' assessments. (Doc. 11 at 6-11; Doc. 18 at 2-5). The Commissioner alleges that the ALJ considered Dr. Wyrick's physical examination and other medical findings but reasonably determined those findings did not support the limitations assessed by the reviewing physicians. (Doc. 17 at 3-4). The Commissioner notes that plaintiff has cited medical findings that demonstrate a right upper extremity impairment, but the Commissioner argues plaintiff has not met his burden to show how his impairment affects his functioning. (*Id.* at 4).

The ALJ's decision to reject the right upper extremity restrictions imposed by reviewing physicians Drs. Hughes and Freihofner is not supported by substantial evidence. First, Dr. Wyrick's office notes do not constitute sufficient medical evidence to discount the right upper extremity restrictions imposed by the reviewing physicians. The notes do not include an assessment of specific functional limitations. Nor does the record include a physical capacity questionnaire or functional assessment completed by Dr. Wyrick indicating whether, in his medical opinion, plaintiff had handling, feeling or fingering restrictions. Thus, it was not reasonable for the ALJ to infer from the absence of handling, feeling and fingering restrictions in Dr. Wyrick's records that it was the treating physician's medical opinion that plaintiff had no such restrictions.

Further, the ALJ did not take into account the numerous medical findings that demonstrate an objective basis for the handling, feeling and fingering restrictions assessed by the reviewing physicians. Dr. Wyrick noted upon examination of plaintiff's right upper extremity in October 2011 that plaintiff had some intrinsic atrophy of the right hand, he did not have "good

9

strength" in that hand, he had mild clawing of the ring and small fingers, and he had decreased

sensibility in the small fingers, which were symptoms consistent with ulnar nerve palsy. (Tr.

852). Dr. Wyrick reported that December 2011 EMG test results confirmed ulnar nerve palsy

and that plaintiff had been having "significant ulnar nerve symptoms," including clawing,

flattening of the palm, intrinsic wasting, and an absence of sensation in the small finger. (Tr.

503). In January 2012, Dr. Wyrick reported that x-rays of plaintiff's right forearm revealed

"pretty good healing" of the radius and ulna but that plaintiff was "not really making much

progress with the ulnar nerve" and he still had "the positive Tinel's right where the ulnar nerve

goes into the FCU [flexor carpi ulnaris]." (Tr. 477). In April 2012, a physician in the neurology

department at St. Elizabeth Hospital reported that plaintiff suffered a permanent nerve injury in

the right upper extremity as a result of his accident. (Tr. 418-19). She reported that plaintiff's

ability to do fine and gross manipulations was "poor" as to the right upper extremity as a result of

the ulnar nerve injury with atrophy of the muscles and limited mobility. (Id.). Dr. Wyrick

reported that same month that plaintiff's "exam has not really changed much." (Tr. 874).

Plaintiff still had "some weakness secondary to his ulnar nerve palsy" and he had intrinsic

atrophy in the hand. (Id.). Dr. Wyrick diagnosed plaintiff with right both-bone forearm fracture

and right ulnar nerve palsy. (Id.). He opined that plaintiff was nearing maximum medical

improvement status. (Id.). Diagnostic imaging for a history of fifth digit swelling with open sore

in June 2012 disclosed mild degenerative changes and mild erosive changes in the DIP joint

ulnar aspect of the fifth digit. (Tr. 898). A hand surgeon who examined plaintiff on December 5,

2012, found plaintiff had significant hypothenar and intrinsic muscle atrophy, decreased

sensation to light touch in the right ulnar nerve distribution in the right hand, and "significant

10

weakness of the hand intrinsic muscles," together with mild clawing of the right small and ring fingers. (Tr. 941). The surgeon reported that he would submit paperwork to amend plaintiff's workers compensation claim to include osteomyelitis of the right small finger based on bone scan results, and he stated that a later decision would be made as to whether plaintiff needed surgery on his finger. (Tr. 942).

The ALJ inexplicably failed to consider these objective medical findings in determining that the reviewing physicians' opinions imposing handling, feeling and fingering restrictions were not supported by the medical evidence. The ALJ ignored the considerable medical evidence in support of the reviewing physicians' findings and instead relied solely on Dr. Wyrick's failure to specify such restrictions in his office notes to discount their assessments. Because significant objective medical findings support the upper right extremity restrictions imposed by the reviewing physicians, and because Dr. Wyrick did not indicate whether the specific restrictions the reviewing physicians assessed were warranted, the ALJ erred by rejecting the reviewing physicians' assessments as unsupported by the medical evidence of record.

Nor did the ALJ reasonably discount the reviewing physicians' opinions on the ground they were inconsistent with plaintiff's reported activities. (Tr. 17). The ALJ found that significant restrictions on handling, feeling and fingering were inconsistent with plaintiff's reported activities of playing cards and pool, folding laundry, preparing meals, and using a computer. (Tr. 17, citing Tr. 468- plaintiff reported to Dr. Michael A. Murphy, Ph.D., in December 2011 that he folded laundry, prepared meals, and used a home computer; Tr. 924- plaintiff reported to Dr. Terry Schwartz, Psy.D., in January 2012 that he played cards, did laundry and prepared meals when he felt up to it, and played pool). The ALJ did not cite any medical

11

evidence to show that plaintiff's reported activities were inconsistent with the restrictions imposed by the reviewing physicians. *See Mason v. Comm'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at \*13 (S.D. Ohio April 14, 2008) (the "ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.") (citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No. 1:12-cv-250, 2013 WL 1721943 (S.D. Ohio Apr. 22, 2013) (Report and Recommendation), *adopted*, 2013 WL 4080714, at \*8 (S.D. Ohio Aug. 13, 2013).  To the extent the ALJ relied on the observation she made when evaluating plaintiff's credibility that the type of activities plaintiff reported "often require some degree of bilateral dexterity" (Tr. 17), the ALJ did not point to any medical evidence in the record that demonstrates the ability to perform activities that require "some bilateral dexterity" is necessarily inconsistent with a limited ability to finger, feel and handle.  Finally, the ALJ ignored evidence in the record indicating that plaintiff has difficulty performing the activities he reported.  (*See e.g.* Tr. 315-22- plaintiff reported in his January 2012 function report that it takes him twice as long as usual to prepare simple meals because of a lack of feeling and grip strength in his hand and that "playing cards is very difficult").  Although the ALJ was not bound to accept plaintiff's testimony regarding his limitations, neither was the ALJ justified in finding that plaintiff's reported activities were inconsistent with restrictions on his ability to handle, feel and finger assessed by the reviewing physicians and in discounting their opinions on this basis in the absence of record evidence to support her finding.

For these reasons, the ALJ's decision to afford "little weight" to the opinions of the nonexamining state agency physicians limiting plaintiff to light work with right upper extremity

restrictions is not substantially supported by the evidence.  Plaintiff's first assignment of error

should be sustained.

### 2. **Weight to the treating psychologist**

Plaintiff alleges that the ALJ erred by failing to properly weigh the opinion of his treating

psychologist, Dr. Kevin Murphy, Ph.D.  (Doc. 11 at 11-18; Doc. 18 at 2-5).  Plaintiff alleges that

the ALJ violated the treating physician rule by failing to afford Dr. Murphy's opinion

"controlling weight" and by failing to give "good reasons" for rejecting his opinion.  Plaintiff

alleges that the ALJ was required to credit Dr. Murphy's opinion because it is well-supported by

objective medical evidence and is not inconsistent with the other substantial evidence in the

record.  (*Id*. at 11).  Plaintiff further alleges that the ALJ erred by failing to evaluate Dr.

Murphy's opinion before considering the other medical opinions of record as purportedly

required by *Gayheart*, 710 F.3d at 376-77.  (*Id*. at 12-13).  The Commissioner alleges that the

ALJ was not required to analyze the medical opinion evidence in any particular order and

therefore did not commit any error in this regard.  (Doc. 17 at 5-6).  In addition, the

Commissioner alleges that the ALJ reasonably gave Dr. Murphy's opinion little weight because

his opinion was not consistent with plaintiff's lack of significant mental health treatment, Dr.

Murphy's own treatment notes, and the other medical opinions of record.  (*Id*. at 7-11).

Dr. Murphy conducted an initial psychological evaluation of plaintiff on November 14,

2011.  (Tr. 350, 413-16).  He administered the MMPI-2 (Minnesota Multiphasic Personality

Inventory-2) to plaintiff at that time.  Dr. Murphy opined that plaintiff was depressed as a result

of ongoing pain, physical limitations and negative life changes following his industrial injury.

(Tr. 415).  He reported that although plaintiff had a tendency to downplay his psychological

problems during the evaluation, they were apparent on specific questioning. (Tr. 415, 910). Dr. Murphy diagnosed plaintiff with an adjustment disorder with depressed mood directly resulting from his industrial accident and reported that plaintiff required ongoing psychotherapy and psychotropic medication. (Tr. 415-16). In March 2013, Dr. Murphy reported that he had been seeing plaintiff every other week since January 2012 for psychotherapy to treat his depression. (Tr. 910). Dr. Murphy reported that plaintiff's depression continued due to his "ongoing arm and hand pain and extreme physical limitations." (*Id.*). Dr. Murphy concluded that "[w]hile he has had some improvement in managing his depression, he still has periods of marked depression and his depression would greatly interfere with his ability to work." (*Id.*). Dr. Murphy completed a mental RFC questionnaire in which he opined that plaintiff had moderate limitations in his ability to accept instructions from or respond appropriately to criticism from supervisors or superiors; maintain attention and concentration for more than brief periods of time; perform at production levels expected by most employers; and tolerate customary work pressures. (Tr. 911-13). Dr. Murphy opined that plaintiff's condition would likely deteriorate if he were placed under the stress of full-time employment. (Tr. 913).

The ALJ gave "little weight" to Dr. Murphy's assessment of moderate limitations and his opinion that plaintiff's condition would likely deteriorate if plaintiff were placed under the stress of a full-time job. (Tr. 18). The ALJ gave three reasons for the weight she afforded Dr. Murphy's opinion: (1) it was inconsistent with the lack of significant mental health treatment; (2) it was inconsistent with Dr. Murphy's treatment notes previously referenced by the ALJ (Tr. 467, 918); and (3) it was inconsistent with plaintiff's reported ability to handle stress, get along with

14

authority figures, use a computer, work on puzzles, manage his finances, and follow instructions. (*Id*.).

As an initial matter, the ALJ did not err by failing to evaluate Dr. Murphy's mental health assessment prior to those of the other mental health providers of record. *Gayheart* requires the ALJ to assess whether a treating source's opinion is entitled to controlling weight before applying the regulatory factors to decide the amount of weight to which the opinion is entitled. *Gayheart*, 710 F.3d at 376-77. However, the Sixth Circuit did not impose a requirement that an ALJ address medical source opinions in a particular order in the written decision. *Id.*

The ALJ did err by failing to properly evaluate whether Dr. Kevin Murphy's opinion was entitled to controlling weight. Substantial evidence does not support a finding that Dr. Murphy's opinion is (1) unsupported by his clinical findings and diagnoses, and (2) inconsistent with "the other substantial evidence in [the] case record." *See Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). *See also* 20 C.F.R. § 416.927(c)(2). Dr. Murphy is a treating psychologist who rendered his assessment after seeing plaintiff every other week over a 14-month period for medical management of his mental health symptoms. (Tr. 910-13). Dr. Murphy explained in his assessment that plaintiff continued to suffer from depression due to his ongoing hand and arm pain and physical limitations. (Tr. 910). The ALJ erred by failing to properly consider whether Dr. Murphy's assessment was supported by his findings rendered over the course of more than one year of treatment. The ALJ cited two documents to show that Dr. Murphy's opinion was inconsistent with his treatment notes: (1) Dr. Murphy's August 1, 2012 treatment note, which states that while plaintiff "has made progress in better managing his depression since the last summary, he continues to have regular bouts of depression" (Tr. 918); and (2) a record dated

15

December 2011 stating that plaintiff did not display evidence of cognitive dysfunction, distractibility, or memory deficits (Tr. 467). (Tr. 18). Neither of these documents supports the ALJ's finding. Dr. Murphy's report of *some* improvement in plaintiff's management of his condition is not necessarily inconsistent with Dr. Murphy's conclusion that plaintiff experienced moderate limitations and his condition would deteriorate under the stress of full-time work, particularly given Dr. Murphy's finding that plaintiff continued to suffer from depression on a regular basis. *See, e.g., Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir. 2008) (a doctor's observation that a patient with mental impairment was "'stable and well controlled with medication' during treatment does not [necessarily] support the medical conclusion that [the patient] can return to work") (citing *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)).

Moreover, the ALJ committed a factual error in finding that Dr. Murphy's opinion was inconsistent with his treatment notes. (Tr. 18). In making this finding, the ALJ relied on a record that is not a treatment note and was not generated by Dr. Kevin Murphy. (Tr. 467). The document the ALJ cited is actually a page from the report of one-time consultative examining psychologist Dr. Michael A. Murphy, Ph.D., who examined plaintiff on behalf of the BWC on December 13, 2011, for the alleged condition of adjustment disorder with depressed mood. (Tr. 464-73). Dr. Michael Murphy conducted a psychological assessment, a clinical interview and a mental status examination and concluded he could not "establish the presence of a DSM-IV condition as alleged, Adjustment Disorder with depressed mood." (Tr. 472). Dr. Michael Murphy concluded that plaintiff's cognitive, social, and behavioral functions were intact without evidence of impairment. (*Id.*). As the Commissioner notes, the ALJ correctly attributed the December 2011 report to Dr. Michael Murphy when summarizing the evidence of record. (Tr.

16

16); however, the ALJ erroneously ascribed the report to Dr. Kevin Murphy when weighing the medical opinion evidence (Tr. 18). (Doc. 17 at 7, n.3). The fact that the ALJ correctly stated in one part of her decision that Dr. Michael Murphy prepared the December 2011 report does not rectify the mistake the ALJ committed when weighing the medical opinion evidence. Neither was the ALJ's error harmless. The ALJ discounted the treating psychologist's opinion based on a purportedly inconsistent treatment note that was in fact part of a consultative report generated by a one-time examining psychologist. This is an invalid and unsupported reason for the ALJ to give less than controlling weight to the treating psychologist's opinion.

Further, the ALJ did not consider whether Dr. Kevin Murphy's assessment was consistent with the other medical evidence of record. *See Gayheart*, 710 F.3d at 376. Dr. Murphy's assessment appears to be consistent with the September 4, 2012 opinion of consultative examining psychologist Dr. Douglas Pawlarczyk, Ph.D., who evaluated plaintiff and administered psychological tests in connection with his workers compensation claim. (Tr. 930-38). Dr. Pawlarczyk opined that plaintiff would have "difficulty sustaining his focus" or concentration for "more extended periods" of time and performing work tasks at a competitive rate, and his ability to tolerate "even minor" stressors was poor. (Tr. 937). Dr. Pawlarczyk opined that plaintiff would be unable to perform any competitive work activity as of the date of the evaluation. (Tr. 937). Dr. Kevin Murphy's opinion also appears to be consistent with the report of nonexamining state agency psychologist Dr. Rose Ann Umana, Ph.D., who reviewed the record in January 2012 and assessed moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace. (Tr. 57). Dr. Umana reported that she gave controlling weight to Dr. Kevin Murphy's January 10, 2012 opinion. (Tr. 58). In that opinion,

17

Dr. Murphy assessed moderate limitations on plaintiff's interest, habits and behaviors and social interactions, and he opined that plaintiff had poor stress tolerance. (Tr. 410-12). The ALJ erred by failing to consider this medical opinion evidence when evaluating whether Dr. Kevin Murphy's assessment was entitled to controlling weight.

It may be that the record warrants a decision declining to give "controlling weight" to the treating psychologist's opinion. However, the Sixth Circuit "has made clear that [the Court] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion[.]" *Cole*, 661 F.3d at 939 (internal quotation marks omitted). Even if Dr. Kevin Murphy's opinion does not warrant "controlling weight," it still must be weighed in accordance with the regulations and the ALJ must give "good reasons" for the weight assigned. Because the ALJ failed to comply with the treating physician rule in assessing Dr. Kevin Murphy's opinion, plaintiff's second assignment of error should be sustained.

### 3. Weight to the consultative examining psychologist, Dr. Taylor Groneck, Ph.D.

Plaintiff alleges that the ALJ erred by giving greater weight to the assessment of the consultative examining psychologist, Dr. Groneck, than she gave to the assessment of Dr. Kevin Murphy. Dr. Groneck performed a consultative examination on June 9, 2012. (Tr. 877-82). Dr. Groneck diagnosed plaintiff with a chronic adjustment disorder with depressed mood. (Tr. 881). Dr. Groneck opined that plaintiff would have no limitations in understanding, remembering, and carrying out instructions; no limitations in maintaining attention and concentration and in maintaining persistence and pace to perform simple and multi-step tasks; some difficulty

18

initiating social interactions with others in the workplace; and some difficulty coping with major changes in his work routine. (Tr. 881-82).

The ALJ gave "significant weight" to Dr. Groneck's assessment for two reasons: (1) the opinion was consistent with the medical evidence of record, which according to the ALJ generally noted no significant problems with concentration or memory (Tr. 17, citing Tr. 879-80-Dr. Groneck's findings; Tr. 467- Dr. Michael Murphy's assessment; Tr. 925- Dr. Schwartz's report); and (2) Dr. Groneck has specialized knowledge in assessing mental impairments and limitations "within the disability standards used by the Social Security Administration." (Tr. 17-18).

The ALJ's reasons for giving greater weight to the opinion of Dr. Groneck than she gave to the opinion of the treating psychologist are not substantially supported by the record. In finding that Dr. Groneck's opinion was consistent with the medical evidence of record, the ALJ ignored the opinions of those psychologists whose assessments do not appear to be consistent with Dr. Groneck's opinion. Specifically, the ALJ did not consider the opinions of treating psychologist Dr. Kevin Murphy, consultative examining psychologist Dr. Pawlarczyk, and nonexamining psychologist Dr. Umana, each of whom indicated that plaintiff had limitations in maintaining concentration and tolerating stress. (Tr. 910-913, 937, 57-58). In light of the ALJ's failure to attempt to resolve the apparent discrepancies among the various psychologists' opinions, his finding that Dr. Groneck's assessment is consistent with the medical evidence of record is not supported.

The only other reason the ALJ gave for adopting Dr. Groneck's assessment - her specialized knowledge in assessing mental limitations under Social Security disability standards -

19

is not a sufficient basis for crediting Dr. Groneck's assessment over that of the treating

psychologist. An acceptable medical source's "amount of understanding of [the SSA's]

disability programs and their evidentiary requirements" is a relevant factor to be weighed in

evaluating a medical opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6)). However,

familiarity with Social Security disability standards does not outweigh the length and nature of

the treatment relationship. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Generally, we give

more weight to opinions from your treating sources, since these sources are likely to be the

medical professionals most able to provide a detailed, longitudinal picture of your medical

impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations,

such as consultative examinations or brief hospitalizations.")). Further, the ALJ was not justified

in crediting Dr. Groneck's opinion over that of other psychologists of record on this ground given

the comparable or greater level of expertise in Social Security disability evaluation of at least one

other consultative examining psychologist whose opinion the ALJ rejected. The record

documents that Dr. Pawlarczyk spent 25 years as a psychologist with the Social Security

Administration, during which time he reviewed records of disability applicants with psychiatric

impairments. (Tr. 1046). Yet, the ALJ made no mention of Dr. Pawlarczyk's expertise in this

area. It was not reasonable for the ALJ to give significant weight to Dr. Groneck's opinion based

on her experience in applying Social Security standards while ignoring Dr. Pawlarczyk's

extensive experience in this area when weighing his opinion.

Finally, the ALJ unreasonably failed to take into account Dr. Groneck's lack of

familiarity with the record when evaluating her opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), §

416.927(c)(6) ("the extent to which an acceptable medical source is familiar with the other information in your case record [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion"). Dr. Groneck issued her report in June 2012 based on a clinical interview and plaintiff's self-report, which she noted was the only information she had before her. (Tr. 877). The ALJ did not consider Dr. Groneck's limited knowledge of the record when weighing her opinion and affording the opinion "significant weight." (Tr. 17-18). In contrast to Dr. Groneck, Dr. Pawlarczyk reviewed numerous medical records, including treatment summaries completed by Dr. Kevin Murphy in February, July and August 2012 and psychological evaluations completed by Drs. Kevin Murphy, Schwartz and Michael Murphy between November 2011 and January 2012. (Tr. 18, citing Tr. 931; *see* Tr. 937). Yet, the ALJ discounted Dr. Pawlarczyk's September 2012 assessment based on his lack of familiarity "with the entire record in this case." (Tr. 18). The ALJ's inconsistent application of the familiarity with the record factor in weighing the examining psychologists' opinions was unreasonable, and her decision to credit Dr. Groneck's opinion despite the psychologist's lack of familiarity with the record is not substantially supported.

Although the Commissioner was not precluded from ultimately giving greater deference to the opinion of Dr. Groneck than to the opinion of plaintiff's treating psychologist, the ALJ did not engage in the "properly balanced analysis" required in order to do so. *See Gayheart*, 710 F.3d at 379 (citing Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *3) ("In appropriate circumstances, opinions from State agency . . . psychological consultants and other program . . . psychologists may be entitled to greater weight than the opinions of treating or examining sources," such as where the psychological consultant's opinion is based on a review of a

21

complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."). The ALJ adopted the opinion of the consultative examining psychologist Dr. Groneck without providing valid and substantially supported reasons. Plaintiff's third assignment of error should be sustained.

**III. This matter should be reversed and remanded**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, this matter should be remanded for further proceedings under 42 U.S.C. § 405(g). On remand, the ALJ should re-weigh the medical opinions of record and obtain additional medical testimony and vocational evidence as warranted.

IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and the matter be **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 2/10/16

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM E. REVEAL,
    Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:15-cv-179
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).